UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

JORGE L. AGOSTO-AGOSTO,

Plaintiff,

v.

SOL PUERTO RICO, LTD.,
CORPORATIONS A & B, JOHN DOE,
JANE DOE,

Defendants.

Civil No. 10-1615 (JAF)

**OPINION AND ORDER**

Before this court are Defendant Sol's motion for summary judgment (Docket No. 21), Plaintiff's opposition thereto (Docket No. 37), Defendant Sol's Reply thereto (Docket No. 48), Plaintiff's cross-motion for partial summary judgment (Docket No. 25), and Defendant Sol's opposition thereto (Docket No. 35). Plaintiff brought the instant action pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–2806 ("PMPA"). For the reasons stated herein, we hereby grant summary judgment for Defendant Sol ("Defendant") and deny Plaintiff's cross-motion for partial summary judgment.

**I.**

**Factual Summary**

We derive the following factual summary from facts deemed uncontested by this court because they were included in the motions for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed. We draw upon Defendant's statement of uncontested material facts (Docket No. 22), and the exhibits attached thereto, insofar as they are actually uncontested. (See Docket Nos. 22-1 to -20; 38 at 2–5.) We also draw upon Plaintiff's statement of uncontested material facts (Docket No. 26), and the exhibits attached thereto, insofar as they are actually uncontested. (See Docket Nos. 27-1 to -23; 36.)

Plaintiff operated a service station in the Juan González ward of Río Grande, Puerto Rico ("the Station") as Defendant's franchisee from 1989 until 2009.[1] (Docket No. 26 at 2.) Defendant, the franchisor, entered into a lease with Rafael Cáceres Carlo and Maria Acosta de Cáceres ("the Cáceres family") of the property where the Station was located for a term beginning on July 6, 1989, and ending on July 5, 2009. (Docket No. 22 at 4.) The 1989 lease agreement between Defendant and the Cáceres family contained provisions vesting in Defendant a preferential right of first refusal and a right of repurchase (together the "preferential purchase rights"), exercisable in the event of an offer to purchase by, or sale of the property to, a bona fide purchaser. (Id. at 6–7.)

Plaintiff entered into a franchise relationship with Defendant in 1989, which was renewed with a new agreement approximately every three years until the termination of the

---

[1] Plaintiff began operating the Station in 1986 but did not enter into the first of the franchise agreements until 1989. (Docket No. 22 at 2.)

Civil No. 10-1615 (JAF)                                                                                              -3-

franchise relationship on July 5, 2009. (Docket Nos. 26 at 2–3; 36 at 2.) In September 2007, the Cáceres family estate notified Defendant of receipt of an offer to purchase the Station,[2] and in November 2007 Defendant informed the Cáceres estate that it "would not exercise its preferential right to purchase the Station under the same terms and conditions specified in the Offer, but that it reserved the right to do so in the future as provided in the [lease]." (Docket No. 22 at 5.) On August 27, 2008, the Cáceres estate sold the property where the Station was located after receiving a second offer from Antonio Torres Montes, Israel Benitez Naranjo, and their respective spouses ("the landowners") for $544,600. (Id. at 5–6.)

Defendant subsequently executed a Deed of Clarification and Ratification ("Deed of Clarification") on December 1, 2008, acknowledging the sale of the property, ratifying Defendant's lease of the premises, and reaffirming its preferential purchase rights under the lease. (Docket No. 26 at 5.) In the Deed of Clarification, Defendant also affirmed that it "had been notified of the offer made to purchase the marketing premises, in accordance with its right of first refusal, and that it had refused to purchase said property for the amount offered."[3] (Id.) At no point did Defendant offer to assign Plaintiff its preferential purchase rights. (See Docket Nos. 22; 26.)

---

[2] Plaintiff was notified informally of the first offer made to purchase the Station in 2007. (Docket No. 26 at 6.)

[3] Defendant admits this fact with the alleged "qualification that the preferential rights of first refusal and repurchase expired on July 5, 1999" under Puerto Rico law. (Docket No. 36 at 7.) We address this argument in Part III.B., infra.

Civil No. 10-1615 (JAF)                                                                                      -4-

Defendant's letter ("the termination letter") of March 30, 2009, notified Plaintiff of the impending nonrenewal of the franchise relationship on July 5, 2009. (Docket Nos. 22 at 7; 26 at 6.) Plaintiff continued operation of the Station under the franchise agreement until July 5, 2009.[4] (Docket No. 22 at 8.) Defendant did not receive notification of any further offers to purchase the property. (Id. at 6.) Upon expiration of the lease, the landowners sent Defendant a letter offering to renegotiate to renew the lease. (Docket No. 27-2.) Instead of renewing the lease, however, Defendant began the process of removing the tanks and equipment at the Station as authorized by the Puerto Rico Environmental Quality Board. (Docket No. 22 at 8.) Plaintiff brought the current suit on July 6, 2010, under 15 U.S.C. § 2805, seeking actual damages, exemplary damages, and attorneys' fees "in an amount not less than $2.0 million."[5] (Docket No. 1 at 4.)

## II.

## Summary Judgment Under Rule 56

We must grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any

---

[4] Defendant states that during the final year of operation, Plaintiff failed to comply with rent payments, closed the Station for over seven months, and lost his desire to operate the Station after the sale. (Docket No. 22 at 6–7.) Plaintiff admits the preceding facts, with the qualification that regardless of the financial affairs, Defendant terminated the franchise relationship pursuant to § 2804(c)(4) of the PMPA, which governs the termination of a franchise based on the expiration of an underlying lease. (Docket No. 38 at 7.)

[5] Plaintiff, did not, and does not seek injunctive relief, although the PMPA also offers courts and litigants routes to injunctive relief, including the discretionary power to compel the continuation or renewal of the franchise relationship. 15 U.S.C. § 2805.

Civil No. 10-1615 (JAF) -5-

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The movant may satisfy this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, to establish the absence of a genuine dispute of material fact, the movant need not produce evidence but may instead point to a lack of evidence supporting the nonmovant's case. See Fed. R. Civ. P. 56(c)(1)(B); see also Celotex, 477 U.S. at 325. "Once the moving party has made a preliminary showing that no genuine [dispute] of material fact exists, the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy [dispute]." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(1).

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the nonmovant. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150–51 (2000). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require us to determine whether either of the parties deserves

Civil No. 10-1615 (JAF) -6-

judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 106 (1st Cir. 2001) (citing Wightman v. Springfield Terminal Ry., 100 F.3d 228, 230 (1st Cir. 1996)). Thus, in our analysis, we "consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997). "Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain." Id.

## III.

## Analysis

Plaintiff argues that Defendant's failure to assign its preferential purchase rights fell afoul of the PMPA's requirements for franchise termination set forth in § 2894(c)(4), because, Plaintiff alleges, the "lease established that it could exercise [its right to repurchase] even one year after termination of said contract." (Docket Nos. 25 at 12; 36 at 7.) Defendant argues that any right of repurchase or first refusal under the lease had already "expired as a matter of Puerto Rico law" and could not have been assigned to Plaintiff. (Docket No. 24 at 1–2.) In the alternative, Defendant argues that the PMPA did not require it to assign any such preferential purchase right to a franchisee before expiration of the underlying lease and franchise. (Id. at 2.) For the reasons discussed below, we grant summary judgment for Defendant, and deny Plaintiff's partial summary judgment motion.

**A.     Termination Under Section 2802(c)(4)**

Civil No. 10-1615 (JAF) -7-

Under the PMPA, after "the franchisee establishes that the franchise has been terminated or that it has not been renewed, 'the franchisor shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or nonrenewal was permitted under' the Act.'" Santiago-Sepulveda v. Esso Std. Oil Co. (P.R.), 582 F. Supp. 2d 154, 176 (D.P.R. 2008) (quoting § 2805(c)).

The PMPA allows for termination of a franchise agreement based on, inter alia, the "occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise . . . is reasonable." § 2802(b)(2)(C). One such relevant event is the "expiration of the underlying lease," as long as (1) the franchiser notifies the franchisee in writing—prior to the franchise term—of the lease's duration and of the potential expiration and nonrenewal of the franchise agreement; and (2) within the ninety-day notice period described in § 2804(a),[6] the franchisor also offers to assign to the franchisee "any option to extend the underlying lease or option to purchase the marketing premises that is held by the franchisor .. . ." § 2802(c)(4). Having failed to offer to assign any of its preferential purchase rights to Plaintiff, Defendant now claims that such rights expired in 1999. (Docket No. 24 at 1–2.) Thus, we must determine whether, at the time of termination, Defendant held a valid "option to purchase" the premises under the PMPA framework.

**B.     Validity of Defendant's Preferential Purchase Rights**

---

[6] The parties agree that Defendant provided over ninety days' notice. (Docket Nos. 1 at 2; 24 at 6.)

Civil No. 10-1615 (JAF)                                                                                    -8-

We are not entirely persuaded by Defendant's argument that its preferential purchase rights "had expired as a matter of Puerto Rico law on July 5, 1999 and thus, could not be assigned to Plaintiff thereafter." (Id. at 2–3.) The 1989 lease gave Defendant a preferential right of first refusal ("tanteo") and a right of repurchase ("retracto") exercisable in the event of an offer from, or sale to, a bona fide purchaser. (Id. at 6–7.) The Puerto Rico Civil Code limits the life of the conventional right of repurchase of real property to a period of ten years, regardless of the term specified in the original contract. 31 L.P.R.A. § 3902 (2008). Defendant argues that the right of repurchase contained in the 1989 lease was no longer valid by the time of sale in 2008. (Docket No. 24 at 8–9.) Although persuasive with respect to the right of repurchase, this argument ignores the right of first refusal contained in the lease. The Puerto Rico Civil Code imposes no such time limit on the right of first refusal. Román v. Cruz, 163 P.R. Dec. 449, 456 (2004) (comparing right of first refusal to right of repurchase)); Silva Rosas v. Rodriguez Vidal, No. ISCI200500135 (206), 2008 PR App. LEXIS 1428, at *8–9 (P.R. Ct. App. Apr. 8, 2008).

Moreover, the parties' conduct and statements in 2008 undermine Defendant's argument that the preferential purchase rights had expired and were unenforceable. The landowners notified Defendant of the offers to buy the premises, and Defendant explicitly declined to exercise its right of first refusal.[7] (Docket No. 26 at 5–6.) Furthermore,

---

[7] Plaintiff argues that Defendant could have exercised its right of repurchase up to a year beyond the lease expiration. While the term of years specified in the lease to exercise the right of repurchase did extend a year beyond the lease expiration, under Commonwealth law, the holder of the repurchase right must exercise it "within nine (9) days [of the sale], counted from the entry

Defendant's argument overlooks the Deed of Clarification of December 1, 2008, executed after the sale of the property, which purported to reaffirm Defendant's preferential purchase rights that it claims were expired at the time.[8] (Id. at 5.)

**C.     Defendant's Right of First Refusal**

We must now determine whether Defendant's right of first refusal qualified as an "option to purchase the marketing premises that is held by the franchisor" as specified by the PMPA, and if so, whether Defendant's failure to offer to assign the right rendered notice of franchise termination invalid. For the reasons discussed below, we find that Defendant's right of first refusal did not qualify as an "option to purchase" under the PMPA.

The PMPA does not define "option to purchase," and the First Circuit has not addressed the issue. The First Circuit has, however, noted that the PMPA, as a remedial statute, merits a relatively expansive construction but that because of its "derogation of common law rights, [it] 'should not be interpreted to reach beyond its original language and purpose.'" Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F.3d 68, 73–74 (1st Cir. 2002) (quoting C.K. Smith & Co. v. Motiva Enters., 269 F.3d 70, 76 (1st Cir. 2001)).

---

in the registry, and in the absence thereof from the time the redeemer may have had knowledge of the sale." 31 L.P.R.A. § 3924.

[8] The landowners notified Defendant of the first offer to buy the premises in 2007. In 2008, Defendant acknowledged in the Deed of Clarification that it had been notified of the offer to buy the premises, in accordance with its right of first refusal, and had declined to exercise the right—which it preserved for the future. (See Docket No. 26 at 5.) The record shows that Defendant, the Cáceres estate, and the landowners all operated under the assumption that the preferential rights contained in the lease remained enforceable until the leasehold ended.

Although the PMPA seeks to correct the "disparity of bargaining power between franchisor and franchisee, . . . the exceptions are also broad, reflecting an intent to allow reasonable business judgments by the franchisor." Veracka v. Shell Oil Co., 655 F.2d 445, 447–48 (1st Cir. 1981); see also Rivera v. Caribbean Petroleum Corp., 663 F. Supp. 2d 69, 72 (D.P.R. 2009).

Black's Law Dictionary defines an "option to purchase real property" as a contract allowing the holder "to buy the property at a specified price within a specified time, or within a reasonable time in the future, but without imposing an obligation to purchase upon the person to whom it is given." Black's Law Dictionary 1204 (9th ed. 2009). And while the Civil Code is silent, the Supreme Court of Puerto Rico has defined the contours of an option to purchase; the holder of an option has a contractual right of fixed terms, price, and duration permitting the holder to unilaterally decide whether to complete the purchase contract and exercise her option. Lorenzo v. Tirado, CC-2010-256, 2011 PR Sup. LEXIS 68, at *9–*11 (P.R. May 11, 2011). The option-holder may, but is not obligated to, exercise her option to purchase. Id.

Even considering the facts and drawing all inferences in the light most favorable to Plaintiff, Defendant's right of first refusal or "tanteo" does not constitute an "option to purchase." An option-holder carries the unilateral right to exercise her option to purchase the property, whereas Defendant lacked the ability to exercise its right of first refusal alone—its right could only be exercised in the event of a hypothetical offer by a third-party

Civil No. 10-1615 (JAF)                                                                                                                        -11-

bona fide purchaser.[9]  Román, 163 P.R. Dec. at 455–56.  Furthermore, Congress could have—as it did in other provisions of the PMPA—explicitly required that Defendant "offer[] the franchisee a right of first refusal," in addition to an "option to purchase."  See § 2802(b)(2)(E); (3)(D).  But Congress did not so specify, and we "give effect to the statute's plain meaning 'unless it would produce an absurd result or one manifestly at odds with the statute's intended effect.'" Seahorse Marine Supplies, Inc., 295 F.3d at 73–74 (quoting Parisi by Cooney v. Chater, 69 F.3d 614, 617 (1st Cir. 1995)).

Our reading of the statute will not undermine PMPA's objectives.  The instant case is not one in which the franchisor sought to evade PMPA's requirements; Defendant did not retain operating control of the Station or premises and promptly began removal of its tanks and equipment upon termination of the franchise relationship.[10]  Following the First Circuit's example in Veracka, we focus our inquiry on "the lessor and lessee's relationship and the

---

[9] Additionally even assuming arguendo that Defendant's right of repurchase was revived by the Deed of Clarification, it would not qualify as an option to purchase; it could not have been exercised without both a bona fide purchase offer and the landowner's decision to sell the premises. Again, Defendant lacked the unilateral control of the holder of a true option to purchase.

[10] The fact that Defendant did not attempt to retain control or possession of the Station premises distinguishes the present case from the facts of Mustang Mktg., Incorporated v. Chevron Prods. Co., cited by Plaintiff.  406 F.3d 600, 607 (9th Cir. 2005).  In Mustang, the franchisor evicted "the operator by claiming non-renewal of the underlying lease but continu[ed] to hold onto any options it possesse[d] to extend," which the Ninth Circuit called the "very situation . . . the PMPA sought to remedy." Id.  The Mustang court implied that the fact pattern called for a particularly expansive reading of the statute—given the PMPA's character as remedial legislation—because even though the "prior right to lease" held by the defendant-franchisor was not a unilateral option to extend, and even though "it appear[ed] that facially [defendant-franchisor] complied with this statute with the expiration of the original underlying lease, its subsequent actions call into question whether this is what really occurred." Id. at 608.

Civil No. 10-1615 (JAF) -12-

franchisor's intent in terminating the franchise." <u>Rivera</u>, 663 F. Supp. 2d at 73 (citing <u>Veracka</u>, 655 F.3d at 449). Here, "there is no evidence that the relationship was anything but at arm's length. This was not a situation in which the franchisor lost the lease only to be rid of the franchisee and take the property for itself." <u>Id.</u>

Finally, we find that Defendant was not obligated to offer to assign the preferential purchase rights to Plaintiff at the time of the 2008 sale.[11] The PMPA simply requires that Defendant, "during the 90-day period after notification was given," must have offered to assign any "option to purchase the marketing premises held by the franchisor." § 2802(c)(4)(B). Even if we were to stretch the definition of "option to purchase" to include either of Defendant's preferential purchase rights under the lease, Plaintiff's claims would still fail. Plaintiff's PMPA protections had not yet been triggered at the time of sale; the franchise agreement had one year left until its expiration date, no notice of termination had been given, and Defendant theoretically could have renewed both the lease and the franchise relationship. <u>Cf.</u> <u>Mustang</u>, 406 F.3d at 608 (finding that defendant "possessed a duty to extend its [right of first refusal to plaintiff] if the underlying lease had expired").

## IV.

## Conclusion

For the foregoing reasons, we hereby **GRANT** Defendant's motion for summary judgment (Docket No. 21) and **DENY** Plaintiff's motion for partial summary judgment

---

[11] Moreover, Plaintiff had notice, albeit informal, of the first offer, and neither before nor after notification of the sale did Plaintiff make his own offer or offer to match the purchase price.

Civil No. 10-1615 (JAF) -13-

(Docket No. 25). Finally, we note that under the Federal Rule of Civil Procedure 4(m), if a plaintiff fails to properly serve a defendant with process within 120 days from the filing of the complaint, the court must either dismiss the complaint without prejudice or order the plaintiff to effect service within a specified time. In the case at bar, more than thirteen months have elapsed since Plaintiff filed his complaint. Plaintiff has had ample time to learn the names of the four unnamed defendants and to serve them process but has failed to do so without providing good cause. We order Plaintiff to **SHOW CAUSE** within five calendar days as to why we should not dismiss his claims against the unnamed defendants at this time.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 24 day of August, 2011.

                                                s/José Antonio Fusté
                                                JOSE ANTONIO FUSTE
                                                U.S. District Judge